**BURLINGTON INDUSTRIES, INC., John D. Neefus, and Frederick M. Shofner, Appellees,**

v.

**Donald J. QUIGG, Commissioner of Patents and Trademarks, Appellant.**

**No. 86–1423.**

United States Court of Appeals, Federal Circuit.

July 15, 1987.

John W. Dewhirst, Associate Sol., Office of the Solicitor, Arlington, Va., for appellant. With him on brief were Joseph F. Nakamura, Sol. and Fred E. McKelvey, Deputy Sol.

Robert A. Vanderhye, Nixon & Vanderhye, P.C., Arlington, Va., for appellee.

Before DAVIS, SMITH, and NEWMAN, Circuit Judges.

PAULINE NEWMAN, Circuit Judge.

In this appeal by the Commissioner of Patents and Trademarks from the decision of the United States District Court for the District of Columbia in an action brought under 35 U.S.C. § 145, we affirm the district court's decision authorizing the Commissioner to issue claims 1 through 15 of the patent application before it. Burlington Industries, Inc. v. Quigg, 229 USPQ 916 (D.D.C.1986).

The decision of the United States Patent and Trademark Office (PTO) Board of Patent Appeals and Interferences (Board) was that claims 1 through 15 of patent application Serial No. 244,912, inventors John D. Neefus and Frederick M. Shofner, for an invention entitled "Reduction of Water Solids Contributions to Apparent Cotton Dust Levels Through Use of Special Water in Atomizers", were unpatentable for failure to meet the requirements of 35 U.S.C. §§ 103 and 112. The Commissioner appeals the district court's decision as to 35 U.S.C. § 103, but does not appeal the court's decision as to 35 U.S.C. § 112.

A

Details of the invention and of the proceedings before the PTO and at the trial are set forth in the district court's opinion, and are not repeated. The court concluded that based on the cited references the Commissioner had established a prima facie case of unpatentability for obviousness in terms of 35 U.S.C. § 103, and that this prima facie case had been successfully rebutted based on the evidence adduced at trial. The court stated:

In short, plaintiffs introduced persuasive, unrebutted evidence of the initial incredulity and skepticism by experts and others in the field, followed by surprise and ultimately acceptance, as well as evidence of the unexpected, advantageous results that followed the introduction of the invention, all of which resoundingly demonstrated that the invention was not at all obvious in light of the prior art.

Burlington Industries, 229 USPQ at 919. In its evaluation of the evidence on which this conclusion was based, the district court had a powerful advantage over the patent examiner and the Board, an advantage characteristic of section 145 appeals, in that the court heard and saw witnesses, testifying under examination and cross-examination, and had the benefit of extensive discussion and argument.

The invention is technologically simple, as the district court remarked, yet the expert testimony was unchallenged as to both the practical importance of the results and their unexpectedness. For example, Dr. Solomon Hersh, Professor of Textile Engi-

neering and Science at North Carolina State University and "one of the foremost experts in the field of textile engineering", testified that the results "had almost earth-shattering implications about cotton dust control in compliance with the proposed cotton dust regulations at that time." *Id.* at 918–19.

■■ Whether an invention would have been obvious in terms of section 103 is ultimately a legal judgment, dependent upon the factual evidence adduced including evidence pertinent to objective considerations. *Graham v. John Deere Co.*, 383 U.S. 1, 17, 86 S.Ct. 684, 693, 15 L.Ed.2d 545, 148 USPQ 459, 467 (1966). Evidence may be presented through the testimony of experts, and it is pertinent that in this case, as in *United States v. Adams*, 383 U.S. 39, 52, 86 S.Ct. 708, 715, 15 L.Ed.2d 572, 148 USPQ 479, 484 (1966), "noted experts expressed disbelief". *See also In re Piasecki*, 745 F.2d 1468, 1473–74, 223 USPQ 785, 789 (Fed.Cir.1984). The district court referred to Dr. Hersh's testimony as to this "completely unexpected breakthrough" and that he "found this coincidence between the operation of the humidifier and the concentrations of dust so 'unexpected' and 'hard ... to believe,' that he ran three tests over the course of the following three months to confirm the correlation." *Burlington Industries*, 229 USPQ at 918. The record shows additional testimony to the same effect, accompanied by interrogation of the witnesses by opposing counsel and by the court.

The district court's determination that the prima facie case of obviousness had been successfully rebutted by Burlington has not been shown to be in error.

### B

■■ The Commissioner asserts that the district court misconstrued the claims as a matter of law, and that the claims, properly construed, are broader than the scope of the evidence of unobviousness, and must be held unpatentable in terms of section 103 in view of the teachings of Nozaki U.S. Patent No. 3,854,468. The nub of this argument is that the specification and claims refer to "apparent cotton dust" and thus are not limited to "respirable cotton dust"; and that "apparent cotton dust" includes not only the brown cotton dust that actually appears to view, but also the white mineral dust that is taught by Nozaki to be controlled by purification of the cooling water.

We discern no error in the district court's refusal to draw a distinction adverse to patentability based on the appellant's use of the term "apparent cotton dust" in the specification and claims, even though the witnesses discussed the issue in the practical terms of "respirable cotton dust". The burden was on the Commissioner to show, by evidence or by argument, that a controlling distinction existed. No such distinction was shown in the prior art. Nor was it shown that the claims contained terms that were inherently ambiguous, or whose scope and meaning would not be understood by a person of ordinary skill in this art. The term "apparent cotton dust" was coined by the applicant to aid in defining the invention at bar; this lexicography has not been shown to be misleading or inapt.

Patent application claims are given their broadest reasonable interpretation during examination proceedings, for the simple reason that before a patent is granted the claims are readily amended as part of the examination process. *In re Prater*, 415 F.2d 1393, 1404–05, 162 USPQ 541, 550 (CCPA 1969). Claims may be amended for the purpose of distinguishing cited references, or in response to objections raised under section 112. Issues of judicial claim construction such as arise after patent issuance, for example during infringement litigation, have no place in prosecution of pending claims before the PTO, when any ambiguity or excessive breadth may be corrected by merely changing the claim.

To the extent that the Commissioner is raising the argument that the claims are too broadly written due to the applicant's use of "apparent" as a descriptor for cotton dust, this is not a matter of claim

construction or a section 103 determination. This is a matter for consideration under section 112. *In re Chupp*, 816 F.2d 643, 647, 2 USPQ2d 1437, 1440 (Fed.Cir.1987); *In re Brower*, 433 F.2d 813, 816, 167 USPQ 684, 687 (CCPA 1970); *In re Borkowski*, 422 F.2d 904, 909, 164 USPQ 642, 645 (CCPA 1970). This issue of claim imprecision under section 112 was not raised before the district court, and can not now be challenged under the title of claim construction.[1]

C

■ The Commissioner argues that "a fortiori" the district court can not reach a different conclusion on the same evidence that was before the PTO. We too would that the PTO (and the courts) were infallible.

The right to a fresh look by a court of general jurisdiction, upon refusal by the Commissioner to grant a patent, has long been established. As described by the Supreme Court in *Hoover Co. v. Coe*, 325 U.S. 79, 83, 65 S.Ct. 955, 957, 89 L.Ed. 1488 (1945):

> It is evident that alternative rights of review are accorded an applicant—one by appeal to the United States Court of Customs and Patent Appeals, the other by bill in equity filed in one of the federal district courts. In the first the hearing is summary and solely on the record made in the Patent Office; in the other a formal trial is afforded on proof which may include evidence not presented in the Patent Office.

This trial before the district court partook of the quality that is available only with the examination and cross-examination of live witnesses. The district court made clear that in this case it gave substantial weight to the evidence of the unexpected nature of the results. The court referred to testimony such as that of inventor Dr. Shofner "that mill operators at a J.P. Stevens plant initially dismissed him as 'crazy' when he first proposed his solution." *Burlington Industries*, 229 USPQ at 919. If the evidence adduced before the district court led to a decision different from that reached by the PTO, that is not contrary to the legislative purpose of section 145 de novo review. Indeed, it is in fulfillment of that purpose.

The ultimate issue of obviousness is a question of law, based on underlying facts. *In re McCarthy*, 763 F.2d 411, 412, 226 USPQ 99, 100 (Fed.Cir.1985). Determinations not in accordance with law must be reversed, whether made by a court or by an administrative agency. The underlying facts are reviewed for clear error in their finding, and when additional evidence is adduced beyond that before the PTO the factual weight must be determined afresh. See, e.g., *Fregeau v. Mossinghoff*, 776 F.2d 1034, 1038, 227 USPQ 848, 851 (Fed.Cir. 1985), wherein the court observed that "even in the absence of additional evidence ... a finding of fact by the board may be set aside by the district court if clearly erroneous."

The district court conducted a full trial of the issues, a resource not available to the PTO, and reached an independent conclusion that the claimed invention would not have been obvious to one of ordinary skill. We have considered all of the Commissioner's arguments and discern no reversible error in the district court's decision.

AFFIRMED.

---

1. The section 112 rejection that was before the district court, on the question of the meaning of "pure" water, was not appealed by the Commissioner.