**Joseph W. NEWMAN,
Plaintiff–Appellant,**

v.

**Donald J. QUIGG, Commissioner of
Patents and Trademarks,
Defendant–Appellee.**

No. 88–1312.

United States Court of Appeals,
Federal Circuit.

July 5, 1989.

Joseph W. Newman, Lucedale, Miss., argued pro se.

Fred E. McKelvey, Office of the Sol., Arlington, Va., argued for defendant-appellee.

Before MARKEY, Chief Judge, NEWMAN and MAYER, Circuit Judges.

PAULINE NEWMAN, Circuit Judge.

Joseph W. Newman, *pro se*, appeals the judgment of the United States District Court for the District of Columbia, holding

unpatentable the invention claimed in Mr. Newman's patent application Serial No. 179,474 entitled "Energy Generation System Having Higher Energy Output Than Input". *Newman v. Quigg,* 681 F.Supp. 16, 5 USPQ2d 1880 (D.D.C.1988). We affirm.

### Background

Mr. Newman's application for patent is described by the district court, and we assume general familiarity with that opinion. Claims 38 and 43 are representative of the claims for which Mr. Newman seeks a patent grant:

38. A device which increases the availability of usable electrical energy or usable motion, or both, from a given mass or masses by a device causing a controlled release of, or reaction to, the gyroscopic type energy particles making up or coming from the atoms of the mass or masses, which in turn, by any properly designed system, causes an energy output greater than the energy input.

43. The method of producing usable energy, comprising the following steps:

a. inputting energy into a device from an external source;

b. having electrical current flow within said device; and

c. utilizing the internal electromagnetic energy of at least some of the matter in the device to add to the energy being inputed [sic] into the device from the external source to produce useful energy for use outside of the device having an amount greater than the energy being inputed to the device.

The Patent and Trademark Office ("PTO") Board of Patent Appeals and Interferences affirmed the examiner's rejection of all the claims, *i.e.,* claims 15 through 43, for failure to comply with 35 U.S.C. § 112, first paragraph. The Board held that there was insufficient disclosure to support the claimed result of producing more usable energy output than input. The Board stated that the claimed device was a "perpetual motion machine", and that perpetual motion is impossible for it violates either the first or second law of thermodynamics.

During oral argument to the Board Mr. Newman presented a model of his device and demonstrated its operation. The Board does not refer to this demonstration.

On appeal to the district court, 35 U.S.C. § 145, the court referred the matter to a special master. The evidence before the master included several reports of tests conducted at universities and elsewhere, showing the apparent output of more electric energy than was input by the battery system. A witness, Dr. Hastings, concluded in a pretrial declaration that "[i]t is clear that measured efficiencies for the Newman motor are far in excess of predicted efficiencies. The predicted input power is in agreement with measured input." The evidence also included an affidavit of Mr. J. Rabinow of the National Bureau of Standards, stating his opinion that Mr. Newman's asserted result was "impossible".

The master reported that the results shown for the Newman device appear to conflict with the laws of thermodynamics, and expressed skepticism concerning Mr. Newman's theory of gyroscopic energy and the conversion of mass to energy. The master stated that "[t]here is no evidence corroborating Newman's scientific theory". However, the master also found that the "[e]vidence before the [PTO] and [the district court] is overwhelming that Newman has built and tested a prototype of his invention in which the output energy exceeds the external input energy; there is no contradictory factual evidence". The master concluded that

Even though the operation of Plaintiff's system seems contrary to recognized scientific principles, Plaintiff has demonstrated the operation of his system by very clear evidence and is therefore entitled to a patent if he otherwise satisfies the requirements of the Patent Statute (35 USC). *In re Chilowsky,* 229 F.2d 457, 43 C.C.P.A. 775 (1956).

Before the district court, the Commissioner strongly objected to the master's report. The district court ordered, as recommended by the master and requested by the Commissioner, that the application be referred back to the PTO for review by a

different patent examiner. The court also ordered, as recommended by the master, that the claims thus reviewed be those in a Rule 116 amendment that had previously been refused entry. This amendment made changes in the claims that had been on appeal to the Board, amending all the claims except claims 38 and 43.

The second examiner entered the Rule 116 amendment and rejected all the claims for failure to comply with 35 U.S.C. §§ 101, 102, 103 and 112. The examiner ordered Mr. Newman, pursuant to 35 U.S.C. § 114, to submit working models of three embodiments of his invention, based on three drawings in the specification, to the National Bureau of Standards ("NBS") for testing, under penalty of abandonment. Mr. Newman sought relief from this requirement and its penalty, which reached this court by mandamus petition. Mr. Newman pointed out that he had demonstrated a working model to the Board, had invited observation by the PTO of additional demonstrations, and that this new demand for working models was burdensome and unnecessary.

This court held the requested relief to be unnecessary:

> Newman has pending in the district court a § 145 action from which an appeal to this court will lie, whether the PTO does or does not treat his application as abandoned. Thus, the PTO's threat [of abandonment] does not require issuance of the writ to aid or preserve our prospective appellate jurisdiction, (or the jurisdiction of the district court). *In re Makari*, 708 F.2d 709, 218 USPQ 193 (Fed.Cir. 1983).

*In re Newman*, 763 F.2d 407, 410, 226 USPQ 97, 99 (Fed.Cir.1985). This court thus held that a PTO holding of abandonment under these circumstances could not deprive the courts of jurisdiction. In all events, Mr. Newman did not comply with the examiner's order within the time period set by the examiner, and the examiner declared the patent application abandoned.

The district court had followed, through periodic status conferences, these proceedings before the second examiner. When this phase was ended by the examiner's declaration of abandonment, at the district court's suggestion the Commissioner ordered Mr. Newman under Fed.R.Civ.P. 34 to produce a model of his invention for testing by NBS. The Commissioner's order, as modified by the district court and by this court on petition for writ of mandamus, *In re Newman*, 782 F.2d 971, 228 USPQ 450 (Fed.Cir.1986), *reh'g denied mem.* (Feb. 12, 1986), in essence required that a normal *inter partes* test be conducted at NBS, and that the tests be completed and the report issued within thirty days after the device was produced.

Mr. Newman produced a model of his invention within the fourteen days set by the court. After almost two months the district court, at a status conference, gave Mr. Newman's counsel NBS's proposed protocol for testing the device, ordered the NBS to commence testing, and granted an extension as requested by the Commissioner to allow NBS to complete the testing.

NBS received no response on Mr. Newman's behalf to the proposed test protocol. The record states that there were two observations of tests on behalf of the Commissioner, and none on behalf of Mr. Newman. The NBS report, issued five months after delivery of the device, concluded that the device did not produce more energy output than input, and that it showed efficiency measured at between 27 and 77 percent. At the subsequent trial the district court held the claimed invention unpatentable for noncompliance with 35 U.S.C. §§ 101 and 112.

On this appeal Mr. Newman asserts that the district court clearly erred in rejecting the findings of the special master, and that reversal of that error would moot all subsequent proceedings. He also argues that the NBS did not conduct a proper or fair *inter partes* test, and that patentability is supported by the heavy weight of the evidence.

### Jurisdiction

The Commissioner asserts that the judgment of the district court should be vacated for lack of jurisdiction, on the ground that

the patent application became abandoned when, during the referral to the PTO by the district court, Mr. Newman did not produce three working models as the second examiner ordered. The Commissioner argues that the district court lost jurisdiction over Newman's application when the application was held abandoned by the examiner.

■ We settled this issue in 1985 in *In re Newman*, 763 F.2d at 410, 226 USPQ at 99, wherein we held, as quoted *supra*, that "the PTO's threat [of abandonment] does not require issuance of the writ to aid or preserve our prospective appellate jurisdiction, (or the jurisdiction of the district court)." That holding was and is the law of the case. The examiner's order of abandonment could not unilaterally extinguish the court's jurisdiction over the pending § 145 action, and the district court correctly declined to terminate its proceeding.

The Commissioner argues, alternatively, that even if the district court had that jurisdiction it extended only to claims 38 and 43, and judgment should be vacated as to all the other claims, on the theory that all the other claims were not properly before the court.

Claims 38 and 43 were the only claims that were not amended in the Rule 116 amendment that was ordered by the district court to be the basis of examination by the second examiner. The second examiner having rejected these claims and held them abandoned, the Commissioner argues that Mr. Newman was required to proceed by certain internal PTO procedures in order to preserve these amended claims for judicial review, such as the filing of a petition to the Commissioner protesting the examiner's ruling of abandonment, followed by an appeal to the court if that petition were denied.

The Commissioner further states that the prior claims, the Board's rejection of which was the basis for the appeal as filed under 35 U.S.C. § 145, also were no longer before the district court except for claims 38 and 43, because all the other claims were amended when the district court ordered further examination after the master's re-

port. That is, the claims in their forms both before and after entry of this Rule 116 amendment had lost the right or opportunity for judicial review, according to the Commissioner.

■ We do not agree with this creative theory. The district court had authority to refer the application to the PTO for designated purposes, including that a second examiner review the claims in certain amended form. As we held in 1985, see *In re Newman, supra*, the Commissioner has no authority unilaterally to remove claims from the jurisdiction of the court.

■ While the Board will normally have decided every issue that is raised before the district court, as discussed in *Rendleman v. Ladd*, 197 F.Supp. 304, 309, 130 USPQ 300, 304 (D.D.C.1961), the court is not required to obtain, or suspend all proceedings while the applicant obtains a full administrative Board decision for every fresh aspect that arises during the course of the judicial proceeding. Otherwise, the Commissioner could not have added a ground of rejection, 35 U.S.C. § 101, that was not before the Board. *See generally DeSeversky v. Brenner*, 424 F.2d 857, 858, 164 USPQ 495, 496–97 (D.C.Cir.1970) (It is generally improper to raise new issues in a § 145 action, on the principle of exhaustion of administrative remedies).

■ A district court action under 35 U.S.C. § 145 is a *de novo* determination of patentability. It is not limited to the record before the PTO. *Gould v. Quigg*, 822 F.2d 1074, 1076–77, 3 USPQ2d 1302, 1303 (Fed.Cir.1987); *Fregeau v. Mossinghoff*, 776 F.2d 1034, 1037, 227 USPQ 848, 850 (Fed.Cir.1985). Unless a party is prejudiced thereby or due process is denied, expeditious justice is better served by avoiding artificial restrictions on the district court's authority to resolve all issues reasonably raised in the proceeding. *See generally Burlington Industries, Inc. v. Quigg*, 822 F.2d 1581, 1584, 3 USPQ2d 1436, 1439 (Fed.Cir.1987).

*The Report of the Special Master*

■ Mr. Newman argues that the district court should not have rejected the

recommended findings and conclusions of the special master. Appellate review of the correctness of the district court's action in turn requires determination of whether the master's findings are or are not clearly erroneous. Fed.R.Civ.P. 53(e)(2); *Milliken Research Corp. v. Dan River, Inc.*, 739 F.2d 587, 593, 222 USPQ 571, 576 (Fed.Cir. 1984).

The district court held the master's report to be "clearly erroneous in that it apparently contradicts the first law of thermodynamics"—an apparent contradiction that had been referred to by the master. This court, like the master and the district court, believes that the laws of thermodynamics do not brook contradiction. However, the laws of thermodynamics do not require closing of either the scientific or the judicial mind to the possibility that the phenomena manifested can be explained by theories that do not violate inviolable scientific principles. The master so recognized, even as he expressed strong skepticism about Mr. Newman's scientific theory of harnessing gyroscopic or electromagnetic energy. But when the court-ordered test did not verify the results claimed by Mr. Newman, the matter of the scientific explanation of the claimed results became moot.

Taking notice of the unusual nature of Mr. Newman's asserted technological results and proffered explanation, we discern no error in the district court's decision to decline to adopt the recommended conclusion of the special master, and instead to order further examination by the PTO, followed by the order that a test of performance of the Newman device be conducted by the NBS.

### The NBS Tests

Mr. Newman asserts that the NBS testing procedure was flawed and generally unfair, and that the district court did not adhere to the conditions set in *In re Newman*, 782 F.2d at 975, 228 USPQ at 453. Mr. Newman points out that NBS took five months after he delivered the device, and that NBS routinely failed to provide sufficient notice to enable him to attend the tests.

This court had declined to intervene in the district court's grants, at the Commissioner's request, of extensions of time for the NBS tests. *In re Newman*, Misc. No. 105 (Fed.Cir. March 19, 1986). However, the record shows none of the usual comity of *inter partes* * test procedures. Neither the NBS nor the PTO is shown to have made reasonable efforts to consider the convenience of Newman or his counsel.

Mr. Newman argues that the NBS evaluation was fatally defective because all tests were conducted with the device grounded. He states that it is essential that his device not be grounded during operation. He points to two reports from Mississippi State University which were provided to NBS; one report showed efficiencies below 100% when the device was grounded, and the other contained comments by one of the Mississippi State engineers that efficiencies greater than 100% appeared to be obtained when the device was not grounded. It is undisputed that NBS had copies of these reports prior to designing its tests. Mr. Newman argues that had NBS sought to duplicate or verify any of these test results reported by others, NBS would have discovered its errors. Newman argues that NBS should have done this in order to confirm or deny his claims.

The Commissioner defends the NBS procedure, arguing that grounding the device did not account for the lower efficiencies observed by NBS. The NBS engineer who designed and conducted the tests testified that his ground would not have affected radio frequency, referring to a theory of one of Mr. Newman's witnesses of how the device worked. But no witness for the NBS or the PTO testified as to performance with all grounding removed. The district court, hearing testimony and argu-

---

* For example, the NBS wrote to the PTO Solicitor: "We will not deal directly with the inventor or his representatives. We are referring all contacts to you in the PTO". Nor was Mr. Newman cooperative. When a NBS engineer asked Newman, who was installing the device at NBS, to identify the output, Newman's counsel directed him not to answer, instead directing the NBS to certain pages in Newman's book.

ment on these points, held that the NBS test procedures were appropriate, and their results dispositive.

We need not decide whether the NBS tests were conducted by a flawed procedure, for any flaw could have been, and was not, corrected by Mr. Newman at the time of the tests. The test protocol designed by NBS contained electrical schematics showing plainly that the device was grounded. Mr. Newman does not dispute that he had a copy of the test protocol before testing began. The record shows no communication or objection. The Commissioner further points out that the patent specification does not mention the need to avoid grounding the device.

Similarly, Mr. Newman now objects to the use by NBS of load resistors connected in parallel with the coil to measure the output. This too was shown in the pre-test plan, and was not objected to.

■ We conclude that Mr. Newman had a duty to raise objection, before or during testing, to any defects in the test protocol that he knew or believed would impair the results. He had a clear chance to obtain a definitive test, and to the extent that he did not take it, he can not now impeach the results that were conducted by procedures of which he had advance knowledge. If there were flaws in the NBS protocol, we do not now give controlling weight to objections that could have been raised at a time when any errors could have readily been corrected. We conclude that Mr. Newman waived or acquiesced in any purported defect in the test procedure by remaining silent throughout the test period.

### The Trial

■ The district court, on trial of the merits, held Mr. Newman's invention unpatentable under 35 U.S.C. § 101 because "Newman's device lacks utility (in that it does not operate to produce what he claims it does)". Utility under 35 U.S.C. § 101 is a question of fact. *Raytheon Co. v. Roper Corp.*, 724 F.2d 951, 956, 220 USPQ 592, 596 (Fed.Cir.1983), *cert. denied*, 469 U.S. 835, 105 S.Ct. 127, 83 L.Ed.2d 69 (1984).

Mr. Newman argues that the district court gave undue weight to the NBS test results, and failed to accord proper and overriding weight to the testimony and affidavits supporting the claimed increase in energy output. The district court acknowledged that it must consider all of the evidence presented at the *de novo* proceeding in reaching an independent conclusion. *Newman*, 681 F.Supp. at 22–23, 5 USPQ2d at 1885.

■ The court described the evidence on Newman's behalf as "largely qualitative rather than quantified by measured data", *id.* at 20, 5 USPQ2d at 1883, while "credit[ing] in full the meticulously thorough and well-documented testing done by NBS". *Id.* at 23, 5 USPQ2d at 1886. The court remarked that at best Mr. Newman's evidence showed prolonged operation on dry cell batteries, but that "such a device is not the one for which Newman seeks a patent." *Id.* We discern no error in the district court's analysis, and conclude that the court did not clearly err in giving controlling weight to the NBS report and in concluding that the utility claimed for Newman's device had not been demonstrated.

Mr. Newman also argues that the district court incorrectly held that his application was not enabling under 35 U.S.C. § 112, first paragraph. He asserts that his claims are adequately supported by, and the invention enabled by, the disclosure. Enablement under 35 U.S.C. § 112 is deemed to be a question of law, *Allen Organ Co. v. Kimball Int'l, Inc.*, 839 F.2d 1556, 1566, 5 USPQ2d 1769, 1777 (Fed.Cir.), *cert. denied*, — U.S. —, 109 S.Ct. 132, 102 L.Ed.2d 104 (1988); although it is apparent that lack of utility because of inoperativeness, and absence of enablement, are closely related grounds of unpatentability. *Raytheon Co.*, 724 F.2d at 956, 220 USPQ at 596.

■ While it is not a requirement of patentability that an inventor correctly set forth, or even know, how or why the invention works, *Diamond Rubber Co. v. Consolidated Rubber Tire Co.*, 220 U.S. 428, 435–36, 31 S.Ct. 444, 447–48, 55 L.Ed. 527 (1911); *Fromson v. Advance Offset Plate, Inc.*, 720 F.2d 1565, 1570, 219 USPQ 1137, 1140 (Fed.Cir.1983), neither is the patent

applicant relieved of the requirement of teaching how to achieve the claimed result, even if the theory of operation is not correctly explained or even understood. *In re Isaacs*, 347 F.2d 887, 892, 146 USPQ 193, 197 (CCPA 1965); *In re Chilowsky*, 229 F.2d 457, 463, 43 C.C.P.A. 775, 108 USPQ 321, 326 (1956).

The district court held that Mr. Newman's claimed device and method do not produce the claimed result, following the teachings of the specification. We affirm the conclusion that the requirements of 35 U.S.C. § 112, first paragraph, are not met.

### Conclusion

The decision of the district court that the claimed invention is unpatentable because it fails to comply with 35 U.S.C. § 101 for lack of utility, and with 35 U.S.C. § 112, first paragraph, for lack of enablement, is affirmed.

### Costs

Each party shall bear its own costs.

AFFIRMED.