PROST, Chief Judge, NEWMAN, MOORE, O’MALLEY, and REYNA, Circuit Judges,
dissenting from the denial of the petition for rehearing en banc.
Inter partes review (“IPR”) is a new, court-like proceeding designed to adjudicate the validity of issued patent claims. In adjudicatory proceedings, claims are given their actual meaning, not their broadest reasonable interpretation. For this reason, we respectfully dissent.
I
The panel majority holds that “Congress implicitly approved the broadest reasonable interpretation standard in enacting the [America Invents Act (“AIA”) ].” Revised Panel Op. at 16. This conclusion cannot stand, as it does, on a silent statute, a contrary legislative history, and a line of case law that counsels an opposite result.
First, the panel decision ignores the usual rule that, “[ojrdinarily, ‘Congress’ silence is just that—silence.’ ” Cmty. for Creative Non-Violence v. Reid, 490 U.S. 730, 749, 109 S.Ct. 2166, 104 L.Ed.2d 811 (1989) (quoting Alaska Airlines, Inc. v. Brock, 480 U.S. 678, 686, 107 S.Ct. 1476, 94 L.Ed.2d 661 (1987)); see also Kimble v. Mawel Entm’t, LLC, 576 U.S. -, -, 135 S.Ct. 2401, 2418, - L.Ed.2d - (2015) (Alito, J., dissenting) (“[I]t is at best treacherous to find in congressional silence alone the adoption of a controlling rule of law.”) (quoting Girouard v. United States, 328 U.S. 61, 69, 66 S.Ct. 826, 90 L.Ed. 1084 *1300 (1946)). While there may be occasions when a court may glean congressional intent from congressional inaction — for- example, when there is a settled judicial interpretation of a statutory section which Congress then re-enacts without change, see Lorillard, Div. v. Pons, 434 U.S. 575, 580, 98 S.Ct. 866, 55 L.Ed.2d 40 (1978); United States v. Powell, 379 U.S. 48, 55 n. 13, 85 S.Ct. 248, 13 L.Ed.2d 112 (1964); cf. Jama v. Immigration & Customs Enforcement, 543 U.S. 335, 351, 125 S.Ct. 694, 160 L.Ed.2d 708 (2005)—this is not such an occasion. There is no statutory section, reenacted by Congress, which has been subject of settled judicial interpretation in favor of the broadest reasonable interpretation. Nor could there be — the AIA is a new statutory regime. Although we have previously considered the appropriateness of the broadest reasonable interpretation in other U.S. Patent and Trademark Office (“PTO”) proceedings, now we are deciding the proper interpretation of a new statute creating a wholly novel procedure. Silence has no meaning in this context.
Here, Congress was not legislating within an already existing regime. To the contrary, Congress created IPRs as a “new post-grant review procedure” that would provide “a more efficient and streamlined patent system that will improve patent quality and limit unnecessary and counterproductive litigation costs.” H.R.Rep. No. 112-98, pt. 1, at 40, 45 (2011), 2011 U.S.C.C.A.N. 67. Originally, Congress established the reexamination process to effect this goal, but in light of the limitations, timing, and costs of these proceedings, Congress decided to start anew and establish new post-grant review procedures, including IPR, in the AIA. See id. at 45-46 (noting the problems with the reexamination process and Congress’s attempts to remedy these issues with amendments before the enactment of the AIA). And it did so by “converting] inter partes reexamination from an examinational to an adjudicative proceeding.” Id. at 46; see also id. at 68 (stating that the AIA would “[ejstablish a new procedure, known as post-grant review,” noting that this procedure “would take place in a court-like proceeding”). As the dissent aptly summarizes: “The post-grant proceedings established by the America Invents Act were intended as a far-reaching surrogate for district court validity determinations.” Revised Dissenting Op. at 3. Congress’s intent in creating a completely new type of PTO proceeding — one bearing the efficiency and finality of district court adjudications of patent validity — could not have been clearer. The panel majority fails to explain why Congress (or anyone else) would have thought it desirable or necessary for the Board to construe the claims during IPRs under a different legal framework than the one used by district courts.
Second, our background of existing law not only fails to support the conclusion drawn by the panel majority, it points to the opposite result. Specifically, we have long explained that the broadest reasonable interpretation standard is a useful tool, prior to patent issuance, for clarifying the metes and bounds of an invention during the back-and-forth between the applicant and examiner when claims are not yet in their final form. In re Prater, 56 C.C.P.A. 1381, 415 F.2d 1393, 1405 (1969) (“Claims yet unpatented are to be given the broadest reasonable interpretation consistent with the specification during the examination of a patent application since the applicant may' then amend his claims, the thought being to reduce the possibility that, after the patent is granted, the claims may be interpreted as giving broader coverage than is justified.”); In re Buszard, 504 F.3d 1364, 1366-67 (Fed.Cir.2007) (“The patent examiner and the applicant, in the give and take of rejection and response, work toward defining the metes and bounds of the invention to be patent *1301 ed."); In re Zletz, 893 F.2d 319, 322 (Fed.Cir.1989) (“[D]uring patent prosecution when claims can be amended, ambiguities should be recognized, scope and breadth of language explored, and clarification imposed.”).
It is the same give-and-take between applicant and examiner that we have said likewise justifies use of the broadest reasonable interpretation standard in certain post-grant proceedings. In re Yamamoto, 740 F.2d 1569, 1572 (Fed.Cir.1984). Indeed, when claims in post-grant proceedings are not eligible for modification because they have expired, the broadest reasonable interpretation standard does not apply. In re Rambus, Inc., 753 F.3d 1253, 1256 (Fed.Cir.2014).
But in district court adjudications, where the applicant lacks “the ability to correct errors in claim language and adjust the scope of claim protection as needed,” the broadest reasonable interpretation standard does not apply. Yamamoto, 740 F.2d at 1572. Rather, a district court “assign[s] a fixed, unambiguous, legally operative meaning to the claim.” Chimie v. PPG Indus., Inc., 402 F.3d 1371, 1377 (Fed.Cir.2005). The point is to arrive at a “concise statement ] of the subject matter for which the statutory right to exclude is secured by the grant of the patent.” Multiform Desiccants, Inc. v. Medzam, Ltd., 133 F.3d 1473, 1476, 1476 (Fed.Cir.1998); see also Nautilus, Inc. v. Biosig Instruments, Inc., - U.S. -, 134 S.Ct. 2120, 2129, 189 L.Ed.2d 37 (2014) (“[A] patent’s claims, viewed in light of the specification and prosecution history, [must] inform those skilled in the art about the scope of the invention with reasonable certainty.”). To find otherwise would ignore the difference between the broadest reasonable interpretation and what a patent actually claims. In obtaining a patent, a patentee discloses his invention to the public in exchange for a limited monopoly, as defined by the claims of the patent. To invalidate those claims using a different standard than one that considers the true meaning and scope of a claim would violate the bargain the patentee struck with the public.
IPRs should be no different. As in district court adjudications, the goal in IPRs is to provide an efficient and effective vehicle for examining the validity of an issued patent. And unlike the PTO proceedings in which we have sanctioned the broadest reasonable interpretation standard, IPRs do not bear the traits that justify the broadest reasonable construction. During IPRs, there is no back-and-forth between the patentee and examiner seeking to resolve claim scope ambiguity; there is no robust right to amend. To the contrary, an IPR is a curtailed, trial-like proceeding meant to efficiently resolve a challenge to patent validity. It may only be instituted on limited grounds, 35 U.S.C. § 311(b), and must conclude within one year (unless extended for six months upon a showing of good cause), 35 U.S.C. § 316(a)(11). The proceeding consists of a brief period of discovery, one round of briefing by the petitioner and challenger, and an oral hearing, before the Board issues its final decision. During this process, the paten-tee is not given the right to amend its claims, but must instead seek the permission of the Board. 35 U.S.C. § 316(d). Even then, the patentee is limited to “one motion to amend,” with additional motions allowed only “to materially advance the settlement of a proceeding” or “as permitted by regulations prescribed by the Director.” Id. Given the absence of exami-national hallmarks justifying the broadest reasonable interpretation standard in other contexts, and the similarities to district court litigation, it is unclear to us why the district court standard should not apply.
*1302 Even the panel majority acknowledges the adjudicative nature and the limited amendment process of IPRs. Revised Panel Op. at 14-16. Yet it brushes these distinctions aside without substantive analysis. With respect to adjudication, the panel majority’s sole response is to claim that the adjudication/examination distinction is irrelevant, and to point to the interference proceeding as one which is “in some sense adjudicatory” and uses “a variant of the broadest reasonable interpretation standard.” Id. at 16. This argument fails to address Congress’s clear intent to equate the particular IPR proceedings at issue here with those occurring in district court.
With respect to amendments, the panel majority observes that “[although the opportunity to amend is cabined in the IPR setting, it is nonetheless available.” Id. at 15. But the court fails to explain how a “cabined” amendment process fits within our prior case law emphasizing the “readily” available nature of amendments in other proceedings in which the broadest reasonable interpretation is appropriate. Burlington Indus., Inc. v. Quigg, 822 F.2d 1581, 1583 (Fed.Cir.1987) (“Patent application claims are given their broadest reasonable interpretation during examination proceedings, for the simple reason that before a patent is granted the claims are readily amended as part of the examination process.”) (emphasis added). We also find unclear the panel majority’s observation that this particular case “does not involve any restriction on amendment opportunities that materially distinguishes IPR proceedings from their predecessors in the patent statute” and that, “[i]f there are challenges to be brought against other restrictions on amendment opportunities as incompatible with using the broadest reasonable interpretation standard, they must await another ease.” Revised Panel Op. at 15-16. If the opinion means to imply that the correctness of the broadest reasonable interpretation standard depends on the specific type of amendments available in a given IPR, we find the suggestion problematic, as we do not see how the Board can be expected to determine whether a certain amendment restriction calls for one claim construction standard or another.
II
Finally, the panel majority also holds that, even if “Congress did not itself approve the broadest reasonable interpretation standard in enacting the AIA, § 316 provides authority to the PTO to adopt the standard in a regulation.” Id. at 17. According to the opinion, although § 316 does not grant the PTO the power to erect “substantive statutory ‘patentability’ standards,” it nonetheless provides enough authority for the PTO to enact a regulation setting forth the standard by which claims shall be construed. Id. at 18. Concluding that Chevron deference therefore applies, the panel majority then decides that the adopted standard is reasonable “not just because of its pedigree but for context-specific reasons.” Id.
It is far from clear to us that this is a case in which we must defer to the PTO’s action. The panel majority bases its conclusion on subsections (2) and (4) of § 316. In our view, these subsections are consistent with Congress’s previous grants of authority to prescribe procedural regulations. Cooper Techs. Co. v. Dudas, 536 F.3d 1330, 1336 (Fed.Cir.2008) (interpreting 35 U.S.C. § 2). Subsection (2) describes regulations specifying standards for the “showing of sufficient grounds to institute a review.” These regulations specify the burden the petitioner must meet for an inter partes review to be instituted. See 37 C.F.R. § 42.108(c). Subsection (4) describes regulations “establishing and governing inter partes re *1303 view.” These regulations provide for IPR’s existence and control how the proceeding is to be conducted. Any doubts about the scope of subsections (2) and (4) are resolved by looking to the remaining eleven subsections of § 316, which are distinctly procedural. Direct Mktg. Ass’n v. Brohl, - U.S. -, 135 S.Ct. 1124, 1132, 191 L.Ed.2d 97 (2015).
The majority states that a claim construction standard falls within subsections (2) and (4) because it “affects both the PTO’s determination of whether to institute IPR proceedings and the proceedings after institution.” Revised Panel Op. at 17. But § 316 does not provide the authority to prescribe regulations on any issue that “affects” decisions to institute or later proceedings. The majority also asserts that the PTO’s broadest reasonable interpretation regulation is the “opposite of a sharp departure from historical practice” because the PTO has long interpreted claims in this way. Id. at 18. Even if this were correct, basing the PTO’s authority to prescribe a regulation on the content of that regulation puts the cart before the horse; the PTO’s authority to prescribe a regulation must first be rooted in statute. FDA v. Brown & Williamson Tobacco Corp., 529 U.S. 120, 161, 120 S.Ct. 1291, 146 L.Ed.2d 121 (2000).
Second, even if the regulation is properly classified as procedural, deference is still not warranted if the PTO’s regulation “is contrary to the intent of Congress, as divined from the statute and its legislative history.” Muwwakkil v. Office of Pers. Mgmt., 18 F.3d 921, 925 (Fed.Cir.1994). Here, Congress intended IPRs to be a viable alternative to district court adjudications of patent validity. Importing the broadest reasonable interpretation into IPRs “defeats the purpose of substituting administrative adjudication for district court adjudication.” Revised Dissenting Op. at 15.
In any event, our joint dissent in this case does not turn on whether or not we apply deference to the agency. Even under the deferential Chevron framework, we would find the PTO’s regulation unreasonable. See Michigan v. EPA, 576 U.S. -, - slip op. at 6 (2015) (“Even under this deferential standard, however, ‘agencies must operate within the bounds of reasonable interpretation.’ ”) (quoting Utility Air Regulatory Grp. v. EPA 573 U.S. -, -, 134 S.Ct. 2427, 2442, 189 L.Ed.2d 372 (2014) (internal quotation marks omitted)). As our prior cases explain,, it makes perfect sense in the course of examining a new or revised claim, as means of clarifying the metes and bounds of an invention, that the PTO construe the claim as broadly as it might reasonably be construed in subsequent enforcement efforts. But in IPRs, as in district court litigation, an already issued claim is being analyzed solely for the purposes of determining its validity. In this context, it makes little sense to evaluate the claim against the prior art based on anything than the claim’s actual meaning.
For these reasons, we respectfully dissent from the court’s refusal to rehear this case en banc.