NEWMAN, Circuit Judge,
dissenting.
I respectfully dissent, for the panel majority’s rulings are contrary to the Leahy- *1284 Smith America Invents Act, Pub.L. No. 112-29, 125 Stat. 284 (2011) (effective September 16, 2012).
The America Invents Act established new post-issuance patent review systems, for the purpose of “providing quick and cost effective alternatives to litigation.” H.R.Rep. No. 112-98, pt. 1, at 48 (2011), 2011 U.S.C.C.A.N. 67, 78. This purpose is achieved by new forms of proceedings in the Patent and Trademark Office, whereby a new adjudicatory body, called the Patent Trial and Appeal Board (PTAB), serves as a surrogate for district court litigation of patent validity. These adjudicative proceedings in the PTO are designed “to review the validity of a patent ... in a court-like proceeding.” H.R.Rep. No. 112-98, pt. 1, at 68, 2011 U.S.C.C.A.N. 67, 92. The goal is improved service to technology-based innovation, and thus to the national interest in creative advance and industrial growth. The panel majority thwarts the statutory plan in several ways.
First, the panel majority holds that the PTAB, in conducting these adversarial post-grant proceedings, need not and should not apply the same patent claim construction as is required to be applied in the courts. Instead, the panel majority ratifies' treating the claims of an issued patent as if they are the proposed claims in the patent application examination stage, when proposed claims are subject to the “broadest reasonable interpretation” examination expedient. The panel majority thus precludes achieving PTAB adjudication of patent validity comparable to that of the district courts, where validity is determined on the legally correct claim construction, not an artificial temporary “broadest” construction. The “broadest” construction is designed to facilitate examination before grant, not to confound litigation after grant.
As a further departure from the legislative plan, the majority holds that the “final and nonappealable” statutory provision relating to whether to institute post-grant proceedings means that “ §314(d) ... must be read to bar review of all institution decisions, even after the Board issues a final decision.” Maj. op. at 1273. This restraint could bar review of information material to the final PTAB judgment, and may in turn impede full judicial review of the PTAB’s decision. This further diminishes the role of the PTO as a reliable arbiter of patent validity.
Several other aspects of the America Invents Act are confusingly treated in the majority opinion. For example, as Cuozzo points out, here the PTAB decision relies on arguments and evidence that had not been raised in the Petition to Institute, although the statute requires that all arguments and evidence must be presented in the Petition. The panel majority states that “[t]he fact that the petition was defective is irrelevant because a proper petition could have been drafted.” Maj. op. at 1274. Such casual disregard of this statutory provision cannot have been intended, by the legislation, and sets a dubious precedent for responsible proceedings.
The post-grant proceedings established by the America Invents Act were intended as a far-reaching surrogate for district court validity determinations. The premise is that an adversarial evidentiary proceeding in the PTO can reliably resolve most issues of patent validity, without the expense and delay of district court litigation, and sometimes even before infringement has occurred. The court today moves these new proceedings in directions inimical to the content and provisions of the America Invents Act, impeding the statutory purpose.
*1285 I
PTO Post-Grant Proceedings as a Surrogate for District Court Litigation
During six years of discussion, hearings, negotiation, and collaboration among the communities of technology-based industry, inventors, legislators,'scholars, bar associations, and the concerned public, solution was sought to a major problem confronting United States industrial advance: the burgeoning patent litigation and the accompanying cost, delay, and overall disincentive to investment in innovation.
The fruit of these efforts, the America Invents Act, is a thoughtful, creative, and ambitious statute whose cornerstone is the shift of patent validity disputes from the courts to the expert agency that previously was concerned primarily with examination for patentability. Previously, disputes of validity of issued patents were the exclusive province of the courts. Now, the America Invents Act not only authorizes the PTO to conduct litigation-type adversarial proceedings to decide patent validity, but also authorizes such proceedings even when there is no “controversy” under ■ Article III.
The premise of the America Invents Act is that these new PTO proceedings will provide a reliable early decision, by technology-trained patent-sawy adjudicators, with economies of time and cost. See 157 Cong. Rec. S7413 (Nov. 14, 2011) (statement of Rep. Smith) (“The new transitional program ... creates an inexpensive and speedy alternative to litigation — allowing parties to resolve [disputes] rather than spending millions of dollars in litigation costs.”).
The goal is to improve the climate for investment and industrial activity, while facilitating the removal of patents that were improvidently granted. See Changes to Implement Transitional Program for Covered Business Method Patents, 77 Fed. Reg. 7080, 7081 (Feb. 10, 2012) (“The purpose ... is to establish a more efficient and streamlined patent system that will improve patent quality and limit unnecessary and counterproductive litigation costs.”). An obstacle to achieving this purpose is the refusal of the PTO to construe patent claims in accordance with the law of claim construction that is applied in the courts — an obstacle now endorsed by the Federal Circuit.
Claim construction is the first step in determining the validity of patent claims. In an adjudicatory proceeding for issued patents, the claims must be construed in accordance with law. In establishing this new adjudicatory system in the PTO, the record shows no debate about whether the PTO, in deciding the validity of issued patents, should apply a different law from the law applied in the courts. The America Invents Act plainly contemplated that the new PTO tribunal would determine validity of issued patents on the legally and factually correct claim construction, not on a hypothetical “broadest” expedient as is used in examination of proposed claims in pending applications.
The America Invents Act, in authorizing the PTO to determine validity by conducting adversarial proceedings, including discovery, depositions, witnesses, experts, briefs and arguments, is designed to reach the correct result in the PTO, the same correct result as in the district courts. See H.R.Rep. No. 112-98, pt. 1, at 75, 2011 U.S.C.C.A.N. 67, 99 (describing these new post-grant proceedings as “adjudicative systems” comparable to district court validity determinations). This legislative purpose fails when the PTO tribunal uses a different standard of claim construction, a standard that does not require the correct claim construction.
The legislative record contains no support for the majority’s view that Congress *1286 intended that the new PTO tribunal need not construe the claims of issued patents correctly. The legislative record does not show a congressional intent that issued patents should be more readily invalidated in these PTO proceedings than in the courts, by broadening the claims into invalidity. This PTO procedure distorts, indeed defeats, the legislative purpose of providing an administrative surrogate for district court determination of patent validity.

Patent claims must be correctly construed for validity as for infrinyement

The construction of patent claims, their meaning and their scope, is the foundation of patent law. As stated in Lighting Ballast Control LLC v. Philips Electronics North America Corp., “[l]egal doctrine in patent law starts with the construction of patent claims, for the claims measure the legal rights provided by the patent.” 744 F.3d 1272, 1282 (Fed.Cir.2014) (vacated on other grounds). These legal rights must be the “correct” rights, not some fuzzy “broadest” measure.
Patent claims are construed as a matter of law, as limited by the specification, the prosecution history, and the prior art. Phillips v. AWH Corp., 415 F.3d 1303 (Fed.Cir.2005) (en banc). Because exclusive rights are determined thereby, claims are construed the same way for validity as for infringement. No statute, no precedent, authorizes or even tolerates broader construction for validity than for infringement. It cannot have been contemplated in the America Invents Act that instead of applying the correct claim construction for adjudication of validity, the PTAB would seek an undefined broadest interpretation to the claims, and then decide the validity of broadest claims that were never granted to the applicant.
The question is not whether a “broadest” construction protocol has a place in the examination of pending applications, where proposed claims are readily amended in the give-and-take of patent prosecution. However, after the patent has issued, announcing a property right on which the patentee and the public rely, the claims must be construed correctly. Absent commitment to the correct construction, this new forum- for adjudication fails its purpose of providing an effective determination of validity. This failure cannot be what the legislators and supporters of the America Invents Act intended when they authorized the PTO to establish an administrative tribunal to determine patent validity through adjudicatory process.

“Broadest reasonable interpretation” is an examination expedient, not the law of claim construction

The broadest reasonable interpretation is authorized for use in the examination of pending applications, as the applicant and the examiner interact to define the invention so as to distinguish or avoid overlap with prior art. See In re Zletz, 893 F.2d 319, 321-22 (Fed.Cir.1989) (“an essential purpose of patent examination is to fashion claims that are precise, clear, correct, and unambiguous.”) Id. The purpose of construing claims broadly during examination is to restrict or clarify the applicant’s proposed claims, not to broaden them. See In re Yamamoto, 740 F.2d 1569, 1571 (the PTO broadly interprets claims during examination since the applicant may “amend his claims to obtain protection commensurate with his actual contribution to the art”) (quoting In re Prater, 56 CCPA 1381, 415 F.2d 1393, 1404-05 (1969)); see generally MPEP § 2111 (requiring the application of the “broadest reasonable interpretation” to pending claims).
Giving proposed claims their broadest reasonable interpretation “serves the public interest by reducing the possibility that claims, finally allowed, will be given broader scope than is justified.” Yamamoto, *1287 740 F.2d at 1571; see In re Hyatt, 211 F.3d 1367, 1372 (Fed.Cir.2000) (the broadest interpretation “is not unfair to applicants, because ‘before a patent is granted the claims are readily amended as part of the examination process’ ”) (quoting Burlington Indus., Inc. v. Quigg, 822 F.2d 1581, 1583 (Fed.Cir.1987)).
The “broadest” protocol aids the applicant and the examiner in defining claim scope during prosecution. It is not a claim construction on which substantive legal rights of validity or infringement are based, or are intended to be based. In contrast, applying the broadest interpretation to issued claims in these PTO post-grant validity determinations does not serve to restrict or clarify claims. Instead, this activity now appears to be used by the PTAB to broaden issued claims inappropriately, for claims can be broadened until they read on prior art — the result about which Cuozzo complains.

These post-grant proceedings provide no right to amend the issued claims, and permission to amend is restricted

A critical difference between the standard procedure of examination of pending applications, and these post-grant proceedings, is the ready pre-grant availability of amendment of the claims. Patent prosecution is a fluid exchange between the examiner and the applicant, and the expedient of broadest reasonable interpretation during examination is based on, and depends on, the applicant’s right to amend the claims. In Yamamoto the court stressed this difference from judicial proceedings:
An applicant’s ability to amend his claims to avoid cited prior art distinguishes proceedings before the PTO from proceedings in federal district courts on issued patents. When an application is pending in the PTO, the applicant has the ability to correct errors in claim language and adjust the scope of claim protection as needed. This opportunity is not available in an infringement action in district court.
740 F.2d at 1572.
In routine examination and reexamination, the amendment of a claim is a back- and-forth process between an examiner and the applicant, who may present amendments and new claims. Reexamination is “conducted according to the procedures established for initial examination under the provisions of Sections 132 and 133.” 35 U.S.C. § 305. The focus of reexamination proceedings “returns essentially to that present in an initial examination.” In re Etter, 756 F.2d 852, 857 (Fed.Cir.1985).
It is significant that when claims in reexamination are not eligible for amendment, as when the patent has expired, the PTO instructs examiners not to use the broadest reasonable interpretation. MPEP § 2258G states:
In a reexamination proceeding involving claims of an expired patent, claim construction pursuant to the principle set forth by the court in Phillips v. AWH Corp., 415 F.3d 1303, 1316 (Fed.Cir.2005) (words of a claim “are generally given their ordinary and customary meaning” as understood by a person of ordinary skill in the art in question at the time of the invention) should be applied since the expired claims are not subject to amendment.
The panel majority is incorrect in concluding that Inter Partes Review proceedings are not materially different with respect to the opportunity to amend. Amid the Inter Partes Review restrictions, patent owners are limited to “one motion to amend,” and are presumptively limited to substituting one issued claim for one amended claim. 37 C.F.R. § 42.221(a)(3). There is no right of amendment in these new post-grant proceedings, and motions to amend *1288 are rarely granted.[1] The majority trivializes this difference, curiously stating that these post grant proceedings do not “involve any restriction on amendment opportunities that materially distinguishes IPR proceedings from their predecessors in the patent statute.” Maj. op. at 1277. That is incorrect. Amendment in post-grant validity proceedings is not of right, and thus far appears to be almost entirely illusory.
It is beyond debate that Inter Partes Review does not allow the kind of iterative amendment process that is part of the “broadest reasonable interpretation” protocol in examination. The restricted role of amendment in the America Invents Act proceedings comports with the intended and expected “correct” claim construction, not the broadest claim construction. It comports with district court practices in adjudication, not PTO practices in examination.

The America Invents Act designed these post-grant review proceedings as an ad-judicatorg process

The majority discounts the adjudicatory purpose of these new PTO proceedings. The majority states that “[t]he inference of congressional approval of the longstanding PTO construction standard also is not undermined by the fact that IPR may be said to be adjudicatory rather than an examination.” Maj. op. at 1278. To the contrary, these differences between adjudication and examination are the fruit of six years of planning, to produce a new adversarial system in the PTO.
The extensive congressional criticism of the now-discarded inter partes reexamination belies the majority’s “inference” that Congress silently approved practices it was not explicitly adopting. These discarded practices resulted in lengthy delays as well as indecisive results. See Inter Partes Reexamination Filing Data *1 (USPTO Nov. 22, 2013), available at http:// www.uspto.gov/patents/stats/inter_parte_ historical_stats_roll_up_E OY2013.pdf. (last visited June 16, 2015) (average pendency of inter partes reexamination was three years).
The America Invents Act was designed to remedy these flaws, and to provide an adjudicatory proceeding with the benefits of adversary participation. Thus the Act provides for discovery, witnesses, argument, and other litigation procedures. The House Report explained that Congress intended to “convert” inter partes reexamination “from an examinational proceeding to an adjudicative proceeding.” H.R.Rep. No. 112-98, pt. 1, at 46-48 (2011), 2011 U.S.C.C.A.N. 67, 77-79; id. at 75 (describing post-grant proceedings and Inter Partes Review as “adjudicative systems”). The House Report states:
Unlike reexamination proceedings, which provide only a limited basis on which to consider whether a patent should have issued, the post-grant review proceeding permits a challenge on any ground related to invalidity under section 282. The intent of the post-grant review process is to enable early challenges to patents.... The Committee believes that this new, early-stage process for challenging patent validity ... will make the patent system more *1289 efficient and improve the quality of patents and the patent system.
Id. at 46.
Inter partes review under the America Invents Act is designed to achieve the benefits of validity proceedings in the district courts. In the PTAB’s words, “[a]n inter partes review is neither a patent examination nor a patent reexamination,” but is “a trial, adjudicatory in nature [which] constitutes litigation.” Google Inc. v. Jongerius Panoramic Techs., LLC, IPR2013-00191, Paper No. 50, at 4 (Feb. 13, 2014). The PTO’s insistence on applying the same artificial claim construction methodology as in pre-grant examination is curious, indeed a negation of the purpose and obligation of this new adjudicatory process.
To conduct this adjudicatory process as the intended surrogate for court actions, the PTAB must apply the same law as is required of the district courts. By imposing the protocol of broadest reasonable interpretation, the PTO and the panel majority frustrate the legislative purpose. The PTO tribunal cannot serve as a surrogate for district court litigation if the PTAB does not apply the correct claim construction, but deliberately applies a “broadest” construction. The possibility of error, the unreliability of result, cannot be salvaged by the possibility that sometimes it may not matter to the result. These new procedures will become no more than a tactical vehicle for delay, harassment, and expenditure, despite the Congressional warning:
While this amendment is intended to remove current disincentives to current administrative processes, the changes made by it are not to be used as tools for harassment or a means to prevent market entry through repeated litigation and administrative attacks on the validity of a patent. Doing so would frustrate the purpose of the section as providing quick and cost effective alternatives to litigation.
H.R.Rep. No. 112-98, pt. 1, at 48 (2011), 2011 U.S.C.C.A.N. 67, 78.
The “broadest reasonable interpretation” examination protocol has no role in adjudication of validity in the courts. Correct adjudication of validity requires correct claim construction, not the broadest construction. These new PTO proceedings have no place for this inapplicable expedient.

The public notice function of claims is defeated by a “broadest” interpretation of claim scope

These new proceedings are intended to provide an efficient test of the notice to the public as to what is covered by the claims. The public interest is in the actual scope of the claims, correctly construed — not their broadest interpretation. Uniformity in claim construction is critical to avoid “a zone of uncertainty which enterprise and experimentation may enter only at the risk of infringement claims [that] would discourage invention only a little less than unequivocal foreclosure of the field.” Markman v. Westview Instruments, Inc., 517 U.S. 370, 390, 116 S.Ct. 1384, 134 L.Ed.2d 577 (1996).
Section 112(b) of Title 35 states: “The specification shall conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the inventor or a joint inventor regards as the invention.” As the Cuozzo situation illustrates, the broadest interpretation is in tension with the role of the specification, as well as the prosecution history, which not only provides information to the public about the scope and meaning of the claims, but also is a long-recognized source of claim interpretation and limitation. Biogen Idec, Inc. v. GlaxoSmithKline LLC, 713 F.3d 1090, 1095 (Fed.Cir.2013); see Vitronics Corp. v. Con *1290 ceptronic, Inc., 90 F.3d 1576, 1583 (Fed.Cir.1996) (the prosecution history “constitute[s] the public record of the patentee’s claim, a record on which the public is entitled to rely.”) Decades of precedent instruct how claims are construed and how validity is determined when litigating over issued patents. If these new post-grant proceedings are to serve the purposes intended by the America Invents Act, the claims of issued patents must be construed the same way in these PTO proceedings as in the courts.
The broadest interpretation is irreconcilable with the traditional obligations of claim construction and public notice. In the public interest, it is unacceptable to create a situation whereby the tribunals charged with determination of patent validity as a matter of law, that is, the PTAB and the district court, could validly reach a different result on the same evidence.

Agency rulemaking authority is to implement the statute, not to change the statute

The America Invents Act directs the PTO to promulgate regulations “establishing and governing” these proceedings “and the relationship of such review to other proceedings under this title.” 35 U.S.C. §§ 316(a)(4), 326(a)(4). This authority relates to the “Conduct of post-grant review” and “Conduct of inter partes review.” The word “conduct” connotes procedure. Section 316 identifies areas whose conduct is assigned to the PTO, including public access to proceedings, discovery rules, and the right to a hearing. I discern no authorization to the PTO to change the law of how claims of issued patents are construed. See generally H.R.Rep. No. 112-98, pt. 1, at 76, 2011 U.S.C.C.A.N. 67, 46.
The panel majority states that it is merely deferring to the PTO’s interpretation of its statutory authority. Deference is not unlimited; the Court advises that “although an agency’s interpretation of the statute under which it operates is entitled to some deference, ‘this deference is constrained by our obligation to honor the clear meaning of a statute, as revealed by its language, purpose, and history.’” Se. Cmty. Coll. v. Davis, 442 U.S. 397, 99 S.Ct. 2361, 60 L.Ed.2d 980 (1979) (quoting Teamsters v. Daniel, 439 U.S. 551, 566 n. 20, 99 S.Ct. 790, 58 L.Ed.2d 808 (1979)); see Muwwakkil v. Office of Pers. Mgmt., 18 F.3d 921, 925 (Fed.Cir.1994) (“When an agency’s interpretation of a statute it is entrusted to administer is contrary to the intent of Congress, as divined from the statute and its legislative history, we owe it no deference.”).
In promulgating 37 C.F.R. § 42.300(b) to authorize and require the broadest reasonable interpretation for these new proceedings, the PTO departed from the purpose of the America Invents Act to create a surrogate for district court litigation. Regulations must serve the statute they seek to implement. See Ernst & Ernst v. Hochfelder, 425 U.S. 185, 213-14, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976) (“The rule-making power granted to an administrative agency charged with the administration of a federal statute is not the power to make law. Rather, it is the power to adopt regulations to carry into effect the will of Congress as expressed by the statute.”).
The America Invents Act refers to the “proper meaning of a patent claim,” see 35 U.S.C. § 301(d) (referring to “the proper meaning of a patent claim in a proceeding that is ordered or instituted pursuant to section 304, 314, or 324”). The “proper meaning” is the correct meaning, applying the law of claim construction. The new PTO regulation authorizing “broadest reasonable interpretation” in these post-grant proceedings defeats “the will of Congress as expressed in the statute,” Ernst & Ernst, 425 U.S. at 214, 96 S.Ct. 1375, for it *1291 defeats the purpose of substituting administrative adjudication for district court adjudication. The curious result is that pat-entees are required in these new PTO proceedings to defend the validity of claims that are construed to be of broader scope than the claims granted upon PTO examination.
II
The decision to institute Inter Partes Review
The America Invents Act states that the PTO’s decision whether to institute review is “final and nonappealable.” 35 U.S.C. § 314(a). The majority states that “On its face, the provision is not directed to precluding review only before a final decision. It is written to exclude all review of the decision whether to institute review.” Maj. op. at 1273. The statute does not mean that all information presented with the petition to institute is barred from consideration on appeal of the final decision.
The stated purpose of the “final and nonappealable” provision is to control interlocutory delay and harassing filings. However, review is not barred of material aspects that were decided in connection with the petition to institute. In Bowen v. Michigan Academy of Family Physicians, 476 U.S. 667, 670, 106 S.Ct. 2133, 90 L.Ed.2d 623 (1986), the Court explained that “[f]rom the beginning ‘our cases [have established] that judicial review of a final agency action by an aggrieved person will not be cut off unless there is persuasive reason to believe that such was the purpose of Congress’,” (alteration in original) (quoting Abbott Labs. v. Gardner, 387 U.S. 136, 140, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967)).
In Block v. Community Nutrition Institute, 467 U.S. 340, 104 S.Ct. 2450, 81 L.Ed.2d 270 (1984), the Court summarized the principle of judicial review of agency determinations:
Whether and to what extent a particular statute precludes judicial review is determined not only from its express language, but also from the structure of the statutory scheme, its objectives, its legislative history, and the nature of the administrative action involved.
Id. at 345, 104 S.Ct. 2450. In this case, Cuozzo argues that the petition to institute was improperly granted. The statute does not preclude judicial review of whether the statute was applied in accordance with its legislated scope.
Conclusion
The America Invents Act was enacted to enable the PTO to resolve validity issues, at reduced cost and delay. This goal is defeated by the court’s preservation of the PTO’s new regulatory discrepancy between validity determinations under the America Invents Act and in the district courts. The purpose of invigorating the incentive role of patents, by providing a faster, cheaper, and reliable determination of the validity of issued patents is thus undercut — to no benefit, and in derogation of this once-promising legislative initiative.

. See Andrew Williams, PTAB Update—The Board Grants Its Second. Motion to Amend (At Least in Part), Patent Docs (Jan. 8, 2015), http://www.patentdocs.org/2015/01/ptab-update-the-board-grants-its-second-motion-to-amend-at-least-in-part.html; see also Jennifer E. Hoekel, PTAB Grants First Opposed Motion to Amend Claims-Patent Trial and Appeal Board, The National Law Review (January 14, 2015), http://www.natlawreview.com/article/ ptab-grants-first-opposed-motion-to-amend-claims-patent-trial-and-appeal-board.